UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| JUAN JOSEPH FLAGG, ) | |
| ) | |
| *Plaintiff,* ) | |
| ) | |
| v. ) | No. 2:23-cv-00458-JMS-MKK |
| ) | |
| JACK HENDRIX, *Executive Classification Director*, ) | |
| ) | |
| *Defendant.* ) | |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Juan Joseph Flagg is incarcerated at Wabash Valley Correctional Facility ("WVCF") and alleges that Defendant Jack Hendrix, Executive Director of Classification at WVCF, violated his constitutional rights by denying his request to be transferred to another facility despite knowing that Mr. Flagg had been threatened and assaulted by other offenders and retaliated against by correctional staff. Specifically, Mr. Flagg asserts First and Eighth Amendment claims against Mr. Hendrix.[1] [*See* Filing No. 17.] Mr. Hendrix has filed a Motion for Summary Judgment as to both of Mr. Flagg's claims, [Filing No. 58], and a Partial Motion to Strike Surreply and Newly Designated Evidence, [Filing No. 71]. Both motions are ripe for the Court's consideration.

**I.**
**PARTIAL MOTION TO STRIKE SURREPLY AND NEWLY DISCOVERED EVIDENCE**

Because the adjudication of Mr. Hendrix's Partial Motion to Strike Surreply and Newly Discovered Evidence informs the arguments and evidence that the Court will consider in connection with the Motion for Summary Judgment, the Court addresses it first. After Mr. Hendrix

---

[1] The Court screened Mr. Flagg's Amended Complaint pursuant to 28 U.S.C. § 1915A, dismissed additional claims Mr. Flagg asserted against other individuals, and severed additional claims against other individuals. [Filing No. 17.]

1

filed his reply in support of his Motion for Summary Judgment, Mr. Flagg filed a 39-page surreply with 14 pages of exhibits. [Filing No. 70; Filing No. 70-1.] Mr. Hendrix has filed a Partial Motion to Strike Surreply and Newly Designated Evidence, arguing that pages 9 to 39 of Mr. Flagg's surreply and Exhibits U through Y "merely seek[ ] to rehash old, unsupported, waived, impertinent, and/or immaterial arguments, and his additional evidence either redesignates evidence already part of the summary judgment record or is waived." [Filing No. 71 at 1.] Mr. Hendrix contends that Mr. Flagg argued in his response that a Report of Inter-Institutional Transfer was backdated and forged, so Mr. Hendrix provided evidence in his reply to address that claim. [Filing No. 71 at 1-2.] He asserts that Mr. Flagg's surreply is not relevant to the authenticity of the Report of Inter-Institutional Transfer, but rather attached exhibits that were already part of the summary judgment evidentiary record (except for two exhibits), and that Mr. Flagg has redacted and then mischaracterized certain evidence. [Filing No. 71 at 2-5.] Mr. Hendrix notes that in pages 9 through 39 of his surreply, Mr. Flagg addresses evidence that Mr. Hendrix originally designated with his Motion for Summary Judgment, and which Mr. Flagg could have addressed in his response brief, so he has now waived his arguments addressing that evidence. [Filing No. 71 at 6-7.]

In his response to Mr. Hendrix's Partial Motion to Strike, Mr. Flagg addresses the merits of his argument that the Report of Inter-Institutional Transfer was altered as well as other arguments Mr. Hendrix raised in his reply. [Filing No. 72 at 3-11.]

Mr. Hendrix argues in his reply that Mr. Flagg rehashes old arguments and also points to inconsistencies with Mr. Flagg's newly-presented evidence. [Filing No. 73 at 1-3.]

"[T]he purpose for having a motion, response and reply is to give the movant the final opportunity to be heard and to rebut the non-movant's response, thereby persuading the court that

2

the movant is entitled to the relief requested by the motion." *Lady Di's, Inc. v. Enhanced Servs. Billing, Inc.*, 2010 WL 1258052, at *2 (S.D. Ind. Mar. 25, 2010) (cleaned up).  Local Rule 56-1(d) allows a summary judgment surreply only in limited circumstances – if the movant cites new evidence in the reply or objects to the admissibility of the evidence cited in the response.  Where a surreply is permitted, it must be limited to the new evidence or objections. *Best v. Safford*, 2018 WL 1794911, at *2 (S.D. Ind. Apr. 16, 2018).  "New evidence" only means that a response is allowed by the non-movant to new evidence cited by the movant, not that the non-movant is allowed to introduce entirely new evidence. *Id.*

The only new evidence Mr. Hendrix presented in his reply related to the authenticity of the Report of Inter-Institutional Transfer.  The parties appear to agree that Mr. Flagg addressed that issue in pages 1 through 8 of his surreply and that to do so was proper.  The Court agrees.  The Court finds, however, that in pages 9 through 39 of his surreply, Mr. Flagg either rehashes the arguments he set forth in his response or raises new arguments that he could have raised in his response and that relate to arguments or evidence Mr. Hendrix presented in connection with his opening brief.  Neither is permitted.

The Court notes that Exhibits U, V, X, and Y submitted with Mr. Flagg's surreply were already part of the summary judgment record.  As to Exhibits T and W, "[t]he Court has the discretion to deny a request for leave to file a supplementary response to a motion for summary judgment where the party does not explain why the materials in the supplementary response could not have been discovered earlier, or why he had not immediately sought to amend or extend the filing deadline." *Spierer v. Rossman*, 2014 WL 4908023, at *3 (S.D. Ind. Sept. 30, 2014), *aff'd*, 798 F.3d 502 (7th Cir. 2015) (citing *Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Stop Treaty Abuse-Wis., Inc.*, 991 F.2d 1249, 1257 (7th Cir. 1993)).  Mr. Flagg has not explained

3

why he did not present Exhibits T and W – the only exhibits that were not already part of the summary judgment record – in connection with his response brief.[2]

The Court **GRANTS** Mr. Hendrix's Partial Motion to Strike Surreply and Newly Designated Evidence, [Filing No. 71], and **STRIKES** pages 9 to 39 of Mr. Flagg's surreply, [Filing No. 70 at 9-39], and Exhibits U through Y, [Filing No. 70-1 at 2-14]. The Court will not consider the stricken material in connection with the Motion for Summary Judgment.[3]

## II.
### MOTION FOR SUMMARY JUDGMENT

**A.    Standard of Review**

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572-73 (7th Cir.

---

[2] Mr. Hendrix argues that Mr. Flagg mischaracterizes Exhibit W by claiming that he was involved in an incident on December 21, 2022 where other inmates shouted racial slurs at him and displayed aggressive behavior. [Filing No. 71 at 3-5.] Specifically, he asserts that Mr. Flagg submitted a redacted version of Exhibit W and that the unredacted version shows that Mr. Flagg was not involved in the incident. [Filing No. 71 at 3-5.] Exhibit W is a redacted Memorandum regarding an Incident Monitoring Program Meeting attended by various Indiana Department of Correction personnel but not Mr. Hendrix, and the issue Mr. Hendrix raises regarding Mr. Flagg's characterization of the incident is irrelevant to whether Mr. Hendrix knew that Mr. Flagg's safety was in jeopardy since Mr. Hendrix was not present at the meeting. The Court notes, however, that the unredacted version of Exhibit W generally refers to racial slurs and aggressive behavior being directed at "individuals of the opposite race at two (2) nearby tables," and does not necessarily indicate that Mr. Flagg was not one of those individuals. [Filing No. 71-1 at 2.] Because the exhibit is irrelevant to the issues in this case and since the Court has stricken it in any event, the Court declines to delve any further into the issue of whether Mr. Flagg mischaracterized the exhibit.

[3] The Court notes, however, that a review of the stricken material indicates that it would not change the Court's decision on the Motion for Summary Judgment in any event.

2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). A court only has to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need not "scour the record" for evidence that might be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573-74 (7th Cir. 2017) (cleaned up). Moreover, "where a reliable videotape clearly captures an event in dispute and blatantly contradicts one party's version of the event so that no reasonable jury could credit that party's story, a court should not adopt that party's version of the facts for the purpose of ruling on a motion for summary judgment." *McCottrell v. White*, 933 F.3d 651, 661 n.9 (7th Cir. 2019) (citing *Scott v. Harris*, 550 U.S. 372, 380-81 (2007)).

A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it contends demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

### B. Factual Background

The facts stated below are not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the light most favorable to "the party against whom the motion under consideration is made." *Premcor USA, Inc. v. Am. Home Assurance Co.*, 400 F.3d 523, 526-27 (7th Cir. 2005). In other words, because Mr. Hendrix has moved for summary judgment under Rule 56(a), the Court views and recites the

5

evidence in the light most favorable to Mr. Flagg, including giving him the benefit of conflicting evidence, and draws all reasonable inferences in his favor. *Ziccarelli v. Dart*, 35 F.4th 1079, 1083 (7th Cir. 2022); *Khungar*, 985 F.3d at 572-73. This means that where Mr. Flagg has submitted admissible evidence regarding his version of events, the Court accepts his version as true for the purposes of summary judgment, ignoring Mr. Hendrix's conflicting evidence.

### 1. *Policy Regarding Interfacility Transfers*

The Indiana Department of Correction ("IDOC") has set forth its policy regarding classification of inmates for interfacility transfers in Policy No. 01-04-101, Adult Offender Classification (the "Classification Policy"). [Filing No. 58-2 at 2; Filing No. 58-4 at 84.] Interfacility transfers may be requested by facility staff or an offender, and requests may take place during or after an offender's annual review. [Filing No. 58-2 at 2; Filing No. 58-4 at 84.] The offender's facility makes the initial transfer determination, which is then reviewed by a central office Classification Analyst. [Filing No. 58-2 at 2.]

In reviewing an interfacility transfer classification decision or appeal, a Classification Analyst may rely on non-exhaustive factors related to an offender's confinement and history, including: administrative reasons; continual, serious, or maladaptive behavior; the offender's behavioral modification plan and classification designation; allowing the incarcerated individual to be closer to home and family and/or increase visits for the incarcerated individual; protecting the incarcerated individual, other incarcerated individuals, or employees; any pending protective custody request; disciplinary reasons; or any other factors concerning the offender's confinement. [Filing No. 58-2 at 2-3; Filing No. 58-4 at 84-85.]

An offender may not submit an interfacility transfer request sooner than one year from a prior transfer or a denial of a transfer request, unless the classification or other restriction

prompting a previous denial has changed. [Filing No. 58-2 at 2; Filing No. 58-4 at 85.] After the Classification Analyst's determination regarding a transfer request, IDOC's central office Executive Director of Classification – Mr. Hendrix until July 2024 and Dalton Haney beginning in July 2024 – would conduct a final review and either adopt the analyst's determination or decline it. [Filing No. 45 at 1; Filing No. 58-2 at 1-2; Filing No. 58-5 at 7.] The Executive Director of Classification is the final reviewing authority for interfacility transfer classification matters. [Filing No. 58-2 at 3; Filing No. 58-4 at 87.] The classification division is not an investigating body regarding inmate safety matters, which are first addressed at the facility level. [Filing No. 58-2 at 4-5; Filing No. 58-5 at 5.] If an inmate or staff member submits a transfer request related to inmate safety or security, they must include supporting documentation with the request for the central office to review. [Filing No. 58-2 at 4-5.]

        2.     *Mr. Flagg Sues Mr. Hendrix In a Different Lawsuit*

On February 19, 2020, Mr. Flagg filed a civil lawsuit against several IDOC Defendants including Mr. Hendrix, alleging that the Defendants violated his constitutional rights related to his then confinement in segregation at WVCF. *See Flagg v. Carter, et al.*, Case No. 2:20-cv-95-JRS-MJD (S.D. Ind.) ("the First Lawsuit"). The parties ultimately settled the First Lawsuit. [Filing No. 58-1 at 48.]

        3.     *December 16, 2022 Assault*

On December 16, 2022, Mr. Flagg was jumped, hit, and kicked by at least one other inmate while walking to chow. [Filing No. 58-1 at 58-60.] At that time, he was already seeing medical staff routinely due to a MRSA infection and he asked them for bandages related to the infection, but did not disclose any alleged assault allegations or injuries related to the allegations. [Filing No. 58-1 at 60-62.] Mr. Flagg told a correctional officer about the assault, but does not know the

name of the officer. [Filing No. 58-1 at 61-62.] WVCF does not have any records reflecting that Mr. Flagg was assaulted on December 16, 2022, and Mr. Flagg's medical records indicate that he was seen by medical staff on December 17 and December 19, 2022 for MRSA dressing changes and wound assessment, but do not reflect that he reported any injury related to the assault. [Filing No. 58-3 at 2; Filing No. 58-10 at 34-37.]

        4.    *Mr. Flagg Requests An Interfacility Transfer*

On August 12, 2022, Mr. Flagg requested an interfacility transfer at his prior annual facility review to be "closer to family." [Filing No. 58-1 at 22; Filing No. 58-2 at 3; Filing No. 58-9 at 1-2.] Supervisor of Classification Matt Leohr recommended granting Mr. Flagg's transfer request in March 2023. [Filing No. 58-1 at 29-30; Filing No. 58-2 at 3; Filing No. 58-6 at 1.]

        5.    *April 2023 Assault*

In April 2023, Mr. Flagg was spit on. [Filing No. 58-1 at 66.] He did not report this incident to any facility or medical staff. [Filing No. 58-1 at 66.]

        6.    *Mr. Flagg's Transfer Request Is Denied*

Mr. Flagg's early 2023 transfer request was denied at the facility level by Deputy Warden Kevin Gilmore on April 20, 2023.[4] [Filing No. 58-1 at 30; Filing No. 58-2 at 3; Filing No. 58-6; Filing No. 58-7 at 1.] On April 28, 2023, Mr. Flagg appealed Mr. Gilmore's denial to IDOC's central office classification division. [Filing No. 58-1 at 30; Filing No. 58-2 at 3; Filing No. 58-7 at 1.] In his appeal, Mr. Flagg stated: "This reply is unappreciated. I ask that this final review

---

[4] A May 9, 2023 memorandum from Mr. Leohr to Mr. Flagg inadvertently stated that the IDOC central office had approved Mr. Flagg's transfer request, [Filing No. 58-8 at 5], but this memorandum was written in error, [Filing No. 58-9 at 2]. Despite the error, Mr. Flagg was aware that his transfer request had, in fact, been denied. [Filing No. 58-7; Filing No. 58-8 at 6; Filing No. 58-9 at 2.]

authority read my initial appeal. I stand on it. I have been targeted, retaliated against as well as even attacked. I want this matter investigated thoroughly and effectively." [Filing No. 58-7 at 1.]

       7.     *May 2, 2023 Assault*

On May 2, 2023, Mr. Flagg was jumped by other inmates. [Filing No. 58-1 at 66.]

       8.     *Mr. Flagg's Appeal of the Denial of His Transfer Request Is Denied*

On May 8, 2023, Mr. Flagg's appeal and transfer request were denied by central office Classification Analyst Randy Crawford due to a recent negative adjustment. [Filing No. 58-2 at 4; Filing No. 58-6.]⁵ As Executive Director of Classification, Mr. Hendrix reviewed Mr. Crawford's determination and concurred with his decision, ultimately denying Mr. Flagg's appeal on May 26, 2023 due to overall negative adjustment/maladaptive behavior related to Mr. Flagg's 2022 guilty conduct history. [Filing No. 58-2 at 4; Filing No. 58-4 at 84; Filing No. 58-7 at 1-2.] Specifically, Mr. Flagg had been found guilty of two conduct violations in 2022, including: (1) on February 2, 2022, when he was found guilty of Offense C-372, fighting, and was sanctioned with a written reprimand and loss of privileges; and (2) on December 28, 2022, when he was found guilty of Offense C-360, disruptive behavior, and was sanctioned with a written reprimand. [Filing No. 14-1 at 20; Filing No. 58-1 at 40-42; Filing No. 58-2 at 4.] Mr. Hendrix "advised [Mr. Flagg]

---

⁵ Mr. Flagg argues in his response brief that the Report of Inter-Institutional Transfer, [Filing No. 58-6], is a "forged document" and was "backdated for the argu[]ment to support a false claim of why [Mr. Flagg's] transfer was denied." [Filing No. 64 at 37.] He argues that he never received a copy of the Report of Inter-Institutional Transfer that was signed and dated by Mr. Crawford until discovery in this case. [Filing No. 64 at 41.] The Court has not identified anything nefarious about the Report of Inter-Institutional Transfer that purports to be signed and dated by Mr. Crawford. It appears that Mr. Flagg received a copy of the Report of Inter-Institutional Transfer signed only by Mr. Leohr on March 23, 2023, [Filing No. 64-1 at 65], but this does not conflict with the version also produced to Mr. Flagg that contains both Mr. Leohr's March 23, 2023 signature and Mr. Crawford's signature dated May 8, 2023, [Filing No. 58-6], and none of the evidence that Mr. Flagg presented in connection with his sur-reply indicates that Mr. Crawford's signature was forged or backdated.

9

that an improved conduct record was recommended so that positive consideration could be given to any future transfer request." [Filing No. 58-2 at 4.]

At the time that Mr. Hendrix affirmed the denial of Mr. Flagg's transfer request, and at all times relevant to Mr. Flagg's claims, Mr. Hendrix was not aware of any safety or security threat to Mr. Flagg. [Filing No. 58-2 at 5.] From 2022 to the filing of the First Lawsuit, there is no record of Mr. Flagg or any facility staff requesting an interfacility transfer based on concerns for Mr. Flagg's safety or security. [Filing No. 58-9 at 2.] Dating back to 2020, IDOC does not have any protective custody documents on file related to Mr. Flagg. [Filing No. 58-2 at 4.]

### 9. *Mr. Flagg Seeks Medical Treatment in June 2023*

Mr. Flagg sought medical treatment on June 6, 2023, claiming that he had been jumped about two weeks earlier and that he was suffering from jaw pain. [Filing No. 58-10 at 84-85.] X-rays did not reflect any abnormalities to his jaw. [Filing No. 58-10 at 87-88.]

### 10. *Mr. Flagg Again Appeals the Denial of His Transfer Request*

In July 2023, Mr. Flagg attempted to appeal Mr. Hendrix's final appeal classification decision, but Classification Analyst Derek Christian reviewed and rejected the appeal. [Filing No. 58-8.] There is no indication that Mr. Hendrix participated in this decision. [*See* Filing No. 58-8 at 1.]

### 11. *This Lawsuit*

Mr. Flagg initiated this litigation on September 22, 2023, [Filing No. 2], and the Court screened the Complaint pursuant to 28 U.S.C. 1915A and allowed First and Eighth Amendment claims to proceed against Mr. Hendrix, [Filing No. 17]. Mr. Hendrix has moved for summary judgment on both of Mr. Flagg's claims. [Filing No. 58.]

10

    *12. May 31, 2024 Assault*

  On May 31, 2024, Mr. Flagg was "snatched off" of his top bunk by his cellmate. [Filing No. 58-1 at 69.] Mr. Flagg complained about the assault through WVCF's grievance process. [Filing No. 58-1 at 69-70.]

  **C. Discussion**

   *1. Eighth Amendment Claim*

  Mr. Flagg alleges that Mr. Hendrix acted with deliberate indifference to the danger that Mr. Flagg was facing from other inmates when he denied Mr. Flagg's transfer request. [*See* Filing No. 14 at 3.]

  In support of his Motion for Summary Judgment, Mr. Hendrix argues that he did not violate Mr. Flagg's Eighth Amendment rights because he had no knowledge of a substantial risk of serious harm to Mr. Flagg. [Filing No. 60 at 11.] He notes that he was the Director of Classification and supervised the central office classification division, but that the classification division "is not an investigating body regarding inmate safety matters, which are first addressed at the facility level." [Filing No. 60 at 11.] He asserts that if an inmate or staff member submits a facility transfer request based on safety and security concerns, "supporting documentation must be submitted to central office" and that the only transfer request from Mr. Flagg that Mr. Hendrix reviewed was based on a desire to be closer to family. [Filing No. 60 at 11.] Mr. Hendrix acknowledges that Mr. Flagg stated in his classification appeal that he had "been targeted, retaliated against[,] as well as even attacked," but that IDOC did not have any protective custody records related to Mr. Flagg and "there was nothing 'obvious' from [his] appeal that would have put [Mr.] Hendrix on notice of any substantial risk of serious harm to [Mr.] Flagg [that] existed based on his current confinement at WVCF." [Filing No. 60 at 11.] Mr. Hendrix argues that there is no record of an interfacility

11

transfer request by Mr. Flagg or facility staff related to safety or security, that Mr. Hendrix had no knowledge of any assaults or safety risk regarding Mr. Flagg, and that there is no record of Mr. Flagg ever reporting an alleged assault to facility staff, let alone to Mr. Hendrix. [Filing No. 60 at 11.]

In his response, Mr. Flagg argues that Mr. Hendrix "turned a blind eye" to his letters regarding safety and security, and that he sent 30 such letters directly to Mr. Hendrix. [Filing No. 64 at 6-7; Filing No. 64 at 23.] Mr. Flagg also points to his appeals of the denial of his transfer request in which he noted that he had been attacked, and "supportive documentation" that he provided. [Filing No. 64 at 16-17.] He argues further that a family member had called facility staff regarding a non-party WVCF Officer (Officer Tierney) and a temporary transfer at WVCF, [Filing No. 64 at 30], that he was attacked in December 2022 and had attempted suicide, [Filing No. 64 at 30-33], that he spoke to the Warden about safety concerns and the Warden told Mr. Leohr, [Filing No. 64 at 25], that other inmates observed him being attacked, [Filing No. 64-1 at 2-7], that his transfer request was initially approved, [Filing No. 64 at 25], and that he discussed safety and security concerns in his appeal of the denial of his transfer request, [Filing No. 64 at 22].

Mr. Hendrix reiterates in his reply that he was not aware of any substantial risk of harm to Mr. Flagg. [Filing No. 67 at 5.] He argues that none of the correspondence related to Mr. Flagg's fear for his safety based on Officer Tierney working in his unit was sent to Mr. Hendrix and he did not know about it. [Filing No. 67 at 5-6.] Mr. Hendrix argues that Mr. Flagg did not report an assault in December 2022 and has not shown that Mr. Hendrix knew about it. [Filing No. 67 at 6-7.] He argues further that the Warden's correspondence to Mr. Leohr after Mr. Flagg voiced concern regarding assaults "in no way supports that [Mr.] Hendrix was put on notice of any alleged

12

threat to [Mr.] Flagg's safety." [Filing No. 67 at 7-8.] As to the 30 letters Mr. Flagg claims he sent to Mr. Hendrix regarding his safety, Mr. Hendrix argues that there is no evidence the letters were ever sent, that he did not receive them, and that, in any event, Mr. Flagg testified that he sent the letters after Mr. Hendrix denied his appeal of the transfer request. [Filing No. 67 at 8.] Mr. Hendrix also notes that records indicate that Mr. Flagg was placed on suicide watch due to the death of his mother and not because he had been attacked. [Filing No. 67 at 9.] Mr. Hendrix argues that the Affidavits from other inmates do not show that Mr. Hendrix was aware of any attacks. [Filing No. 67 at 9-10.] He asserts that Mr. Flagg's statement in his appeal of the denial of his transfer request that he had been targeted, retaliated against, and attacked was too vague to put Mr. Hendrix on notice of a substantial risk of harm and that the letter initially approving Mr. Flagg's transfer request was inadvertently sent by Mr. Leohr. [Filing No. 67 at 10-12.]

Mr. Flagg argues in his surreply that Mr. Crawford's signature on Mr. Flagg's transfer request is forged and backdated. [Filing No. 70 at 5-6.]

Prison officials have a duty to protect inmates from violent assaults by other inmates. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). They incur liability for the breach of that duty when they were "aware of a substantial risk of serious injury to [an inmate] but nevertheless failed to take appropriate steps to protect him from a known danger." *Guzman v. Sheahan*, 495 F.3d 852, 857 (7th Cir. 2007) (quotation and citation omitted); *see also Santiago v. Walls*, 599 F.3d 749, 758-59 (7th Cir. 2010). To succeed on a claim for failure to protect, Mr. Flagg must show that: (1) Mr. Hendrix was aware of a substantial risk of serious injury to him; and (2) he acted with deliberate indifference to that risk. *See Farmer*, 511 U.S. at 834, 837; *Dale v. Poston*, 548 F.3d 563, 569 (7th Cir. 2008). An official will only be liable when he disregards that risk by failing to take reasonable measures to abate it. *Borello v. Allison*, 446 F.3d 742, 747 (7th Cir. 2006).

Mr. Flagg has presented evidence that fellow inmates and other prison officials knew that he had been attacked and feared for his safety, but the only evidence that potentially shows that Mr. Hendrix himself knew that Mr. Flagg was in danger is Mr. Flagg's deposition testimony that he wrote him 30 letters and Mr. Flagg's statement in his appeal of the transfer denial that he had been "targeted, retaliated against as well as even attacked." [Filing No. 58-7 at 1.] First, as to the 30 letters, Mr. Flagg also testified that he sent the letters after Mr. Hendrix's May 26, 2023 denial of the appeal. [Filing No. 58-1 at 57 ("Q: Do you have, like, an approximate, like the month or…the year when you primarily wrote those letters?  A: -- from May 26 when I got that denial, I wrote him – I wrote him – I waited a week and then I just started sending them out every day.").] Because Mr. Flagg sent the letters regarding being in danger after Mr. Hendrix had already denied his appeal of the transfer decision, the letters could not have made Mr. Hendrix aware of the danger Mr. Flagg was in before he denied the appeal.

Second, Mr. Flagg's statement in his appeal of the transfer decision that he had been "targeted, retaliated against as well as even attacked" did not explain how he had been targeted or retaliated against, or identify specific instances of being attacked. [*See* Filing No. 58-7.]  His statement was too vague to put Mr. Hendrix on notice that Mr. Flagg faced a substantial risk of serious injury. *See Grieveson v. Anderson*, 538 F.3d 763, 776 (7th Cir. 2008) (affirming grant of summary judgment in defendant's favor where plaintiff only stated that he was afraid and wanted to be transferred, but failed to inform jail staff "of a specific threat to his life (*i.e.*, that he was at risk because of his 'snitch' reputation)"); *Klebanowski v. Sheahan*, 540 F.3d 633, 639-40 (7th Cir. 2008) (general expressions of fear, including those based on prior attacks, "[fell] below the required notice [a jail] officer must have for liability to attach for deliberate indifference").  This is particularly true given that Mr. Flagg stated in his initial transfer request that it was due to

wanting to be "closer to family," and did not refer at all to fears for his safety or security. [Filing No. 58-6.] Because Mr. Flagg did not elaborate on his vague statement that he had been targeted, retaliated against, and attacked, his statement in his appeal is not evidence that Mr. Hendrix was aware that Mr. Flagg faced a substantial risk of serious injury.[6]

To the extent Mr. Flagg argues that Mr. Hendrix should have known that he was in danger, Mr. Flagg would need to show that knowledge of the risk was inferred. *See Grieveson*, 538 F.3d at 775 ("[T[he inquiry is not whether individual officers should have known about risks to [plaintiff's] safety, but rather whether they did know of such risks. Even though the defendants' knowledge of the risk can be inferred, [plaintiff] presents no evidence showing that such an inference is appropriate.") (quotations, citations, and emphasis omitted). Mr. Flagg has made no such showing.

Because Mr. Flagg has not shown that Mr. Hendrix was aware of a substantial risk of harm that Mr. Flagg would face absent a transfer, Mr. Flagg's Eighth Amendment deliberate indifference claim against Mr. Hendrix fails as a matter of law and the Court **GRANTS** Mr. Hendrix's Motion for Summary Judgment, [Filing No. 58], on that claim.

  2. *First Amendment Claim*

Mr. Flagg alleges that Mr. Hendrix retaliated against him for filing grievances, writing letters, and filing the First Lawsuit. [*See* Filing No. 14 at 3-4.]

In support of his Motion for Summary Judgment, Mr. Hendrix argues that no adverse action was taken against Mr. Flagg because he sought transfer to another maximum security prison, Mr.

---

[6] Mr. Flagg also referred to being assaulted multiple times and fearing for his safety in his July 27, 2023 appeal of Mr. Hendrix's decision. [Filing No. 58-8 at 2-3.] But there is no evidence that Mr. Hendrix received or reviewed this appeal – rather, Classification Analyst Christian denied this appeal. [Filing No. 58-8 at 1.]

Hendrix "did not deny or delay transferring [Mr.] Flagg out of a life-threatening situation," Mr. Flagg was not subject to harsher conditions at WVCF, and he was closer to family at WVCF than he would have been if he had been transferred. [Filing No. 60 a 12-13.] Mr. Hendrix asserts that Mr. Flagg cannot prove that any act taken by Mr. Flagg caused Mr. Hendrix to deny his appeal of the transfer request. [Filing No. 60 at 13.] Mr. Hendrix notes that he is frequently named in lawsuits, so "the fact that [Mr.] Flagg previously sued [him] alone does not even establish a plausible inference that a facility transfer denial over 3 years after the prior suit was filed had any causal link." [Filing No. 60 at 13-14.] Mr. Hendrix contends that Mr. Flagg's transfer request was also denied by Mr. Gilmore and Mr. Crawford prior to Mr. Hendrix's denial, and that Mr. Hendrix based his denial on two conduct violations that Mr. Flagg had in 2022. [Filing No. 60 at 13-14.]

In his response, Mr. Flagg argues that he suffered an adverse action because he was in danger due to the denial of his transfer request. [Filing No. 64 at 24-27.] He argues further that Mr. Hendrix used "petty" and "minor" conduct reports that had been expunged to justify his denial of Mr. Flagg's appeal. [Filing No. 64 at 28-29.] Mr. Flagg points to a settlement agreement he entered into with Mr. Hendrix in connection with the First Lawsuit, and also an email from Mr. Hendrix to IDOC personnel from May 2022 related to the First Lawsuit. [Filing No. 64-1 at 61; Filing No. 64-1 at 69-70.]

In his reply, Mr. Hendrix reiterates his argument that Mr. Flagg did not face an adverse action and asserts that Mr. Flagg has not shown that the First Lawsuit – which resulted in a settlement agreement that included a no liability provision and "was entered into to avoid further litigation costs and resources" – had anything to do with Mr. Hendrix's denial of Mr. Flagg's appeal. [Filing No. 67 at 13.] He argues further that Mr. Hendrix's 2022 email to IDOC personnel

16

"merely shows [Mr.] Hendrix directed staff to forward a message from [Mr.] Flagg's attorney to Analyst Randy Crawford for follow up in 2022." [Filing No. 67 at 14.]

To succeed on a First Amendment retaliation claim, a plaintiff must come forward with evidence sufficient to allow a reasonable jury to conclude that: (1) the plaintiff engaged in protected First Amendment activity; (2) he suffered a deprivation that would likely deter future First Amendment activity; and (3) the protected activity was a motivating factor in the defendant's decision to take the allegedly retaliatory action. *Taylor v. Van Lanen*, 27 F.4th 1280, 1284 (7th Cir. 2022). If he does so, the burden shifts to the defendant to show that the deprivation would have occurred even if the plaintiff had not engaged in protected activity. *Manuel v. Nalley*, 966 F.3d 668, 680 (7th Cir. 2020). If the defendant can make that showing, the burden shifts back to the plaintiff to demonstrate that the proffered reason is pretextual or dishonest. *Id.*

The Court assumes without deciding that Mr. Flagg engaged in protected First Amendment activity by filing the First Lawsuit against Mr. Hendrix and that he suffered a deprivation that would likely deter future First Amendment activity by being left at WVCF where he had faced attacks from other inmates. It goes on to consider the third element of Mr. Flagg's claim – whether Mr. Flagg has produced sufficient evidence from which a reasonable jury could conclude that the protected activity was a motivating factor in Mr. Hendrix's decision to take the allegedly retaliatory action.

"The motivating factor [element] amounts to a causal link between the activity and the unlawful retaliation." *Id.* This element may be proven by circumstantial evidence, which may include suspicious timing; ambiguous statements, behavior, or comments directed at others in the protected group; evidence that similarly situated people were treated differently; and evidence that

17

the decisionmaker offered a pretextual reason for an allegedly retaliatory action. *Id.*; *Hobgood v. Ill. Gaming Bd.*, 731 F.3d 635, 643, 44 (7th Cir. 2013).

Mr. Flagg's arguments and evidence regarding causation are purely speculative. First, the mere existence of the First Lawsuit is not enough to show that the lawsuit caused Mr. Hendrix to deny Mr. Flagg's appeal. *See Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007) ("[I]nferences that are supported by only speculation or conjecture will not defeat a summary judgment motion.") (quotation and citation omitted). Second, the email upon which Mr. Flagg relies simply shows that Mr. Hendrix advised an IDOC staff member to direct Mr. Flagg's attorney to speak with Mr. Crawford regarding Mr. Flagg's possible transfer. [*See* Filing No. 64-1 at 61.] It does not show that Mr. Hendrix somehow harbored ill will toward Mr. Flagg due to his filing of the First Lawsuit.

Additionally, and in any event, even if Mr. Flagg had shown that filing the First Lawsuit was a motivating factor in Mr. Hendrix denying his appeal, Mr. Hendrix's proffered reason for denying the appeal was the existence of two conduct violations that Mr. Flagg had engaged in. [Filing No. 58-2 at 4; Filing No. 58-7 at 2.] While Mr. Flagg argues that the conduct violations were expunged, the evidence indicates otherwise. [*See* Filing No. 14-1 at 20 (reflecting a December 28, 2022 finding of "disruptive behavior" and a February 2, 2022 finding of "fighting").] Mr. Flagg has not produced any evidence that basing the appeal denial on these conduct reports was somehow a pretext for retaliation.

Because Mr. Flagg has not shown that his filing of the First Lawsuit was a motivating factor in Mr. Hendrix's decision to deny his appeal of the transfer denial, Mr. Flagg's First Amendment retaliation claim fails as a matter of law and the Court **GRANTS** Mr. Hendrix's Motion for Summary Judgment, [Filing No. 58], on that claim.

## III.
### CONCLUSION

Mr. Flagg has not provided evidence from which a reasonable jury could conclude that Mr. Hendrix was deliberately indifferent to a serious risk of harm when he denied Mr. Flagg's appeal of the transfer request or that Mr. Flagg's filing of the First Lawsuit was a motivating factor in Mr. Hendrix's decision to deny the appeal. Accordingly, the Court **GRANTS** Mr. Hendrix's Motion for Summary Judgment. [58.] The Court also **GRANTS** Mr. Hendrix's Partial Motion to Strike Surreply and Newly Designated Evidence, [71], and **STRIKES** pages 3 to 39 of Mr. Flagg's surreply, [Filing No. 70 at 9-39], and Exhibits U through Y, [Filing No. 70-1 at 2-14].

Date: 6/6/2025

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution:**

JUAN JOSEPH FLAGG
#121969
WABASH VALLEY – CF
WABASH VALLEY CORRECTIONAL FACILITY – Inmate Mail/Parcels
Electronic Service Participant – Court Only

Katherine A. Meltzer
Office of Indiana Attorney General
katherine.meltzer@atg.in.gov

Jacob Paul Zurschmiede
Office of Indiana Attorney General
jake.zurschmiede@atg.in.gov

19